IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

ERIC LONG

CRIMINAL ACTION

NO. 22-17

**Pappert, J.**　　　　　　　　　　　　　　　　　　　　**April 1, 2026**

<u>**MEMORANDUM**</u>

Eric Long moves for a suspended sentence, arguing his counsel was constitutionally ineffective for failing to challenge his competency to stand trial. The Court denies the motion because Long's counsel thoroughly investigated and litigated the issue before the Court found him competent and he pleaded guilty.

I

In January of 2022, a grand jury returned a three-count indictment against Eric Long for (1) Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), (2) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and (3) possession and use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Indictment, Dkt. No. 1.) Long allegedly robbed a convenience store at gunpoint and shot the store manager. (*Id.*) Magistrate Judge Richard Lloret appointed the Federal Community Defender Office to represent Long, (Dkt. No. 4), and Katrina Young entered her appearance to defend him, (Dkt. No. 3). Counsel filed a motion seeking a hearing on Long's desire to proceed *pro se*. (Mot. for Hr'g, Dkt. No. 8.)

At the hearing, the Court directed counsel to file a motion seeking an evaluation of Long's competency to stand trial, (Dkt. No. 12), which she did in May of 2022, (Mot.

1

for Competency Eval. and Treatment, Dkt. No. 15).  Defense counsel retained psychologist Dr. Anna Lawler, Ph.D., to assess Long.  (*Id.* ¶ 3.)  On May 6, 2022, Dr. Lawler interviewed Long for roughly two hours and twenty minutes at the Federal Detention Center in Philadelphia.  (Lawler Eval. at 2, Dkt. No. 82-1, Ex. A.)  In addition, Dr. Lawler reviewed his medical records, grand jury indictment and state court record, and interviewed his sister.  (*Id.*)  Dr. Lawler determined Long met "criteria for a delusional disorder," but that his "delusional thinking appear[ed] limited to his legal situation and [] if he is not specifically engaged on this topic he appear[ed] quite rational."  (*Id.* at 8.)  She concluded Long was "**not competent** to stand trial" and recommended "psychotropic medication so that his psychological symptoms may remit and he can be restored to a state of competency . . ."  (*Id.*) (emphasis in original).

Defense counsel sought an order finding Long incompetent to stand trial and requested further evaluation "to determine whether there [was] a substantial probability that in the foreseeable future he [would] attain the capacity to permit the proceedings to go forward."  (Mot. for Competency Eval. and Treatment at 1 & ¶ 5.)  The Court granted the motion in part and ordered Long to a BOP facility for psychiatric and mental competency examination.  (May 25, 2022 Order, Dkt. No. 20.)  Dr. Jessica Micono, Psy.D., formally evaluated Long over three sessions between June 30 and August 1, 2022 during his roughly thirty days at Federal Detention Center Englewood. (Micono Eval. at 3–4, Dkt. No. 82-2, Ex. B.)  In addition to conducting formal interviews, Dr. Micono evaluated, among other things, telephone calls Long made while

at FDC Englewood, his behavior at the facility, his medical records and Dr. Lawler's June 5, 2022 evaluation.  In her report, Dr. Micono explained that Long

> did not present with any cognitive limitations or mental health symptoms that would impact competency to proceed.  His behavior during evaluation sessions was consistently organized.  He displayed no significant difficulties with concentration or attention.

(*Id.* at 13.)  While she observed that "[Long's] problems appear to arise when things do not go his way, or when he is not given what he requests[]" she concluded that Long was "**not** currently suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him, or properly assist in his defense."  (*Id.* at 14) (emphasis in original.)

On October 18, 2022 the Court scheduled trial for February of 2023.  (Scheduling Order, Dkt. No. 29.)  Defense counsel quickly arranged a third evaluation of her client, and Dr. John S. O'Brien, MD, JD, met with Long at FDC Philadelphia.  (O'Brien Eval., Dkt. No. 82-3, Ex. C.)  Dr. O'Brien reviewed, among other things, Long's criminal history and correctional records, medical records, Dr. Lawler's June 5, 2022 and Dr. Micono's August 17, 2022 evaluation reports.  (*Id.* at 2–4.)  He observed Long was "currently demonstrating prominent psychotic symptoms" and had "what appear to be potential limitations in cognitive functioning."  (*Id.* at 10.)  He concluded Long was "not able to appreciate the nature and object of proceedings against him or participate and assist in them with a reasonable degree of rational understanding" and "was not competent to stand trial."  (*Id.*)

Less than one week after Dr. O'Brien sent defense counsel his evaluation, she moved for a hearing to determine Long's competency to stand trial.  (Mot. for Hr'g, Dkt. No. 30.)  The Court held a telephonic conference, (Dkt. No. 36), and the next day found

Long incompetent to stand trial and ordered that he be sent for restorative treatment

for a period not to exceed four months.  (Feb. 2, 2023 Order, Dkt. No. 37.)  Long arrived

at Federal Medical Center Butner on November 13, 2023.  (Nov. 20, 2023 Letter from

Warden T. Scarantino, Ex. D., Dkt. No. 82-4.)  Drs. Tracy O'Connor Pennuto, J.D.,

Ph.D, and Evan S. Du Bois, Psy.D. jointly issued a forensic evaluation of Long on

March 19, 2024.  (Pennuto & Du Bois Eval., Dkt. No. 82-5.)  They based their

evaluation on, among other things,

1) Long's course of hospitalization, psychological testing and neuropsychological consultation during his roughly four months at FMC Butner,
2) The June 5, August 17 and November 25, 2022 reports by Drs. Lawler, Micono, and O'Brien,
3) Long's medical and criminal records,
4) Monitored telephone calls,
5) Medical imaging including a CT of Long's head and an MRI of his brain,
6) Objective psychological testing, and
7) Numerous interviews.

(*Id.*)  The two doctors observed that Long harbored "fringe" "beliefs and attitudes" but

that they were "not the product of a delusional belief system" nor did they "interfere

with his ability to have a factual or rational understanding of the charges and potential

consequences, [or] inhibit his ability to consult with his attorney."  (*Id.* at 23.)  They

concluded Long "[was] not currently suffering from a mental disease or defect which

render[ed] him incompetent to stand trial."  (*Id.*)  Warden Scarantino issued a

Certificate of Restoration of Competency to Stand Trial as to Long on March 26, 2024.

(*Id.* at 4.)

After a telephonic conference on April 1, 2024, (Dkt. No. 40), the Court ordered a

competency hearing on May 14, 2023, (Dkt. No. 42).  At the hearing, the Court

considered the four evaluations discussed above, the doctors' methodologies and the

certificate of Long's competency to stand trial. (Tr. of Competency Hr'g at 3:9–5:4; 5:21–6:12, Dkt. No. 79.) Defense counsel moved for the admission of the four competency evaluations, and the parties stipulated that if called, each doctor would testify to the contents of the reports they authored. (*Id.* at 5:7–20.) The Court found Long competent to stand trial. (*Id.* at 6:5–13.)

Long thereafter pleaded guilty to Hobbs Act robbery and possession of a firearm by a felon (Counts One and Two) and the government agreed to move to dismiss the charge of possession and use of a firearm in furtherance of a crime of violence (Count Three), which the Court granted. (Guilty Plea Agreement, Dkt. No. 52); (Order Dismissing Count Three, Dkt. No. 61). Long agreed that he could only file a direct appeal or petition for collateral relief if (1) his sentence exceeded the statutory minimum, (2) the court erroneously imposed an upward departure in its guideline calculation, (3) the court imposed an upward variance from the guideline range, or (4) an attorney who represented Long provided him with constitutionally ineffective assistance of counsel. (Guilty Plea Agreement at 9–10.) The Court sentenced him to 235 months' imprisonment, a period of three years' supervised release and a special assessment of $200.00. (Am. J., Dkt. No. 64.) Long filed a notice of appeal, (Dkt. No. 68), then moved to voluntarily dismiss his appeal, which the Third Circuit Court of Appeals granted, *United States v. Long*, No. 25-1470, Dkt. Nos. 12 & 13.

He now moves under 28 U.S.C. § 2255, seeking "[a] proper mental health evaluation along with a suspended sentence" because his "attorney was ineffective for not challenging" his competency determination. (Mot. to Vacate, Set Aside or Correct a Sentence at 6 & 15, Dkt. No. 76.)

II

A

Section 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" where (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  If the Court finds the sentence was imposed without jurisdiction, was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, it may, as appropriate, vacate the judgment, resentence the prisoner or grant the prisoner a new trial.  *Id.* § 2255(b).

The Court need not hold an evidentiary hearing if the motion, case filings and record "conclusively show that the prisoner is entitled to no relief."  *Id.*  A hearing is not necessary where, as here, a petitioner's allegations are "clearly resolved by the record." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005).

B

The two-part test set forth in *Strickland v. Washington* governs ineffective assistance of counsel claims.  466 U.S. 668 (1984).  To prevail on such a claim, the petitioner must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness," and (2) he "suffered prejudice as a result of the deficiency."  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).  If the petitioner fails to satisfy one prong, the Court need not address the other.  *Strickland*, 466 U.S. at 697.

Under *Strickland*'s first prong, the proper measure of counsel's performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Counsel performs deficiently by making errors "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 462 (3d Cir. 2023) (quoting *Strickland*, 466 U.S. at 687). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. There is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("[O]nly the rare claim of ineffectiveness of counsel . . . should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

Under *Strickland*'s second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### III

Long contends only that his counsel was constitutionally ineffective for failure to challenge his competency to stand trial. (Mot. to Vacate, Set Aside or Correct a

7

Sentence at 6.)  A criminal defendant may not be tried, or plead guilty, while incompetent.  *See Drope v. Missouri*, 420 U.S. 162, 171–72 (1975); *Godinez v. Moran*, 509 U.S. 389, 398–99 (1993) (holding the standards for competency to plead guilty and stand trial are the same).  An attorney who does not "request a competency hearing, despite indicia of incompetence" is constitutionally ineffective under the *Strickland* standard.  *Jermyn v. Horn*, 266 F. 3d 257, 300 (3d Cir. 2001).  But when counsel fully investigates and litigates the issue of competency, their strategic choices are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

Long's challenge finds no support in the record.  *See United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (explaining that courts need not accept allegations that are "clearly frivolous on the basis of the existing record.").  His attorney aggressively investigated and litigated his competency.  As soon as she was appointed, she arranged the first of Long's four psychological evaluations.  (Lawler Eval.)  When Dr. Lawler concluded Long was not competent to stand trial, defense counsel sought an order from the Court finding him incompetent and requested further evaluation.  (Mot. for Competency Eval. and Treatment.)  After roughly thirty days of evaluation at FDC Englewood, Dr. Micono determined Long was competent.  (Micono Eval.)  Then, immediately after the Court scheduled trial, defense counsel arranged a third evaluation and Dr. O'Brien concluded Long was not competent to stand trial.  (O'Brien Eval.)  Defense counsel moved for a competency hearing, (Mot. for Hr'g), after which doctors treated and evaluated Long for a period of roughly four months at FMC Butner.  Drs. Pennuto and Du Bois concluded he was "not currently suffering from a mental disease or defect which render[ed] him incompetent to stand trial."  (Pennuto & Du Bois

8

Eval at 23.)  The Court ordered a competency hearing, where defense counsel moved the psychological reports into evidence.  (Tr. of Competency Hr'g at 5:7–20.)  The Court considered the four reports, gave the most weight to the evaluation Drs. Pennuto and Du Bois administered over roughly four months at FCM Butner, and found Long competent to stand trial.  (*Id.* at 3:9–5:4; 5:21–6:13.)

At every opportunity, defense counsel either filed a motion or sought independent evaluations of her client's competency.  She provided appropriate background information and documentation to each evaluating doctor.  (Lawler Eval. at 2); (Micono Eval. at 4); (O'Brien Eval. at 2); (Pennuto & Du Bois Eval. at 11.)  Indeed, the Court cannot identify a vulnerability in any of the reports that defense counsel should have, but did not, address.  *See e.g., Jacobs v. Horn*, 395 F.3d 92, 104 n.7 (3d Cir. 2005) (criticizing counsel's failure to uncover evidence, where an evaluating doctor was unaware of crucial information about the crime accused.)

Long does not overcome the "strong presumption" that counsel was reasonable in her decision not to further litigate the issue of his competency.  *Strickland*, 466 U.S. at 689.  Because he fails to satisfy *Strickland*'s first prong, the Court need not address whether he was prejudiced.  *Id.* at 697.

IV

A § 2255 petitioner can only appeal the denial of his claims if he obtains a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B).  A district court cannot issue one unless the petitioner makes a substantial showing that his constitutional rights were denied.  *Id.* § 2253(c)(2).  To do so, he must demonstrate that reasonable jurists would find the Court's assessment of his claims wrong or debatable.  *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).  A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling and Long has not made a substantial showing that his constitutional rights were violated.

An appropriate Order follows.

BY THE COURT:


**_/s/ Gerald J. Pappert_**
Gerald J. Pappert, J.
